IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MARIE PIERRE, PRISCILA PEGUES,
SHAWNA PELT, SHARON PEREZ, JUDITH
PERKINS, PEARLIE PERKINS, STEPHANIE
PERRY, LEWESA PETERSON, ELIONNE
PIERRE, CANDIDA PINTO, MARY PIPPIN,
DEMETRIA PLUMMER, JACQUELINE POLIO,
AMY POPP, MELISSA PORTER, VIOLA POSLEY,
TONIA POUNCEY, LISA POWELL, NOLA
POWELL, PENNY POWELL, KAYLA PRATT,
ANGELA PRESTON, CHERRYL PRICE, PENNY
PRICE, KASHIKA PRIDE, NAICKA PRIDE,
SHEILA PRUETT, BRENDA RAMIREZ, VALARIA
RAMOS, TANIKA RANDOLPH, DORA RANERO,
SYLVIA RATLIFF, KATHRYN RAWLS, ANNIE
REED, SHAWNA REESE, JOLIE REMY, MARIA
RETAMAL, MERCEDES REYES, MARIBEL
REYNOLDS, MONICA REZA, REBECCA RHODEN,
JUSTINA RICCARD, GINA RICHARDSON,
PATRICIA RICHARDSON, LUWANDA RICHE,
TINA RICHMOND, ELISE RICHTER, MELINDA
RICKS, LAURI RIDLEY, LETITIA RILEY

　　　　　　Plaintiffs,

　　　v.

WYETH LABORATORIES, INC.,
a subsidiary of American Home
Products Corporation; AMERICAN
HOME PRODUCTS CORPORATION,

　　　　　　Defendants.

:Case No. **96- 2503**

: **CIV-ATKINS**



: **COMPLAINT**
**AND JURY DEMAND**

Plaintiffs complain of Defendants and allege:

## PARTIES AND JURISDICTION

1.　　Plaintiffs are residents and citizens of Florida.

2.　　Defendant American Home Products Corporation is a Delaware corporation with its principal place of business in New Jersey.

3.　　Defendant Wyeth Laboratories, Inc. is a New York corporation with its principal place of business in Pennsylvania and is a wholly owned subsidiary of American Home Products Corporation.



4.    Plaintiffs allege the amount in controversy, as set forth below, in excess of $50,000.00 each, exclusive of interest and cost.

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $50,000.00, and because there is complete diversity of citizenship between Plaintiffs and the Defendants.

<u>FACTUAL BACKGROUND</u>

6.    Defendants manufacture and distribute the Norplant contraceptive in the United States.

7.    Norplant consists of a progesterone-like drug, called levonorgestrel, which is encapsulated in silicone capsules.  Six such capsules are implanted below the skin of a woman's arm in a fan-shaped configuration, providing delivery of the contraceptive drug from release through the capsules for up to a five year period.

8.    Both the implantation and explantation of Norplant requires surgery using local anesthesia.

9.    Defendants originally developed and patented levonorgestrel, the drug used in Norplant, in the 1960's, and began marketing levonorgestrel for use in oral contraceptives, such as Nordette.

10.   In 1966, Defendants agreed to permit the Population Council to begin research and development of the encapsulation of levonorgestrel for use as a long-term contraceptive.

11.   Defendants donated levonorgestrel to the Population Council for use in its research, and permitted use of its toxicologic data, in consideration for retaining the rights to manufacture and distribute the encapsulated drug product, which became known as Norplant.

12.   The Population Council received its funding for Norplant research and development from two federal agencies, the National Institutes of Health [NIH] and the United States Agency for International Development [USAID], as well as by some private donations.

13.   By 1975 clinical trials of Norplant began in six countries: Brazil, Chile, Denmark, the Dominican Republic, Finland, and Jamaica.

14.   Further trials began in the early 1980's in Columbia, Ecuador, Egypt, India, Indonesia, Sweden, Thailand, and the United States.

15.   In 1983 Finland approved Norplant for marketing, and in 1985 Sweden approved Norplant.

16.   In December 1990, the United States Food and Drug Administration approved Norplant for long-term contraceptive use.   In 1991, Defendants began marketing Norplant in the United States.

17.   The United States government, through grants from NIH and USAID to the Population Council, funded the majority of the expense in research, developing and obtaining regulatory approval of Norplant. Defendants did participate in the conclusion of the approval process.

18.   Norplant acts as a passive, long-term birth control device for a period of five years after surgical implantation.

19.   Unlike oral contraceptives or barrier contraceptives, Norplant cannot be discontinued by the individual acting independently, but must instead be surgically removed by a medical care provider.

20.   At all times during the process of obtaining approval of Norplant and marketing Norplant in the United States, Defendants have been aware that the side effects and adverse reactions to Norplant are more severe and more frequent than those experienced by comparable birth control methods, such as oral contraceptives.

21. Specifically, Defendants are aware that significant menstrual irregularities occur in women using Norplant, such that 27.6% of women using Norplant suffer from prolonged or extended bleeding, 17.1% spotting, 9.4% amenorrhoea, 7.6% irregular cycles, 7% frequent cycles and 5.2% scanty cycles. These disruptions of the menstrual cycle can last for months, even in excess of one year.

22. In addition to these menstrual disruptions, the side effects of Norplant include, but are not limited to, headache, nervousness, nausea, dizziness, enlargement of the ovaries or fallopian tubes, dermatitis, acne, change in appetite, blood vessel abnormalities, weight gain, mastalgia, hirsutism or alopecia, and skin discoloration. Infection of the implantation site, numbness or pain at the implantation site, and numbness or pain in the arm or hand are also common problems.

23. Plaintiff has suffered physical injury consistent with the side effects as set forth in Paragraphs 21 and 22. In addition, plaintiff suffered emotional distress as a result of the uncertainties surrounding her use of Norplant including fear of further medical complications and injury as a result of the Norplant.

24. Comparable birth control, such as the Nordette oral contraceptive, have no such frequency, severity or multiplicity of adverse effects.

25. Patient literature for Norplant fails to disclose that other birth control options, such as oral contraceptives, have fewer health risks, adverse effects and side effects. Furthermore, as opposed to other contraceptives, such as birth control pills, patients lose the independent ability to control discontinuation of the product. Therefore, if side effects or adverse health affects develop, or if the

4

patient desires to become pregnant, the patient is dependent upon physician intervention, including the associated pain and expense of surgery, to remove Norplant. Patients often forego explantation of the product notwithstanding these adverse side effects due to fears of pain during explantation or because they are unable to afford the expensive surgical procedure.

26. After the conclusion of the five year implantation period, Norplant will continue to deliver levonorgestrel in doses which will no longer prohibit pregnancy.

27. It is foreseeable that many women will fail to remove Norplant after the expiration of five years.

28. Exposure to progesterone during pregnancy may have adverse effects on the developing fetus, yet upon information and belief, Defendants conduct no studies of the potential teratogenicity of Norplant.

29. Defendants disseminate information about Norplant Foundation to promote use of their product among the poor.

30. Various states and political subdivisions in the United States have instituted programs to promote Norplant use among Medicaid recipients and other low-income women.

31. Defendants reap substantial financial benefit through promotion and sales of Norplant to women receiving Medicaid, minority women, low-income women, high school aged women and disadvantaged women.

32. In the two year time period including 1992 and 1993, Defendants received revenues of approximately $270,000,000 from Norplant sales.

33.   Plaintiffs incorporate herein by reference all relevant and consistent pleadings of In Re: Norplant Contraceptive Products Liability Litigation MDL: 1038 and intend to notice the MDL Panel of the existence of this action so that it will be transferred and incorporated into the existing MDL proceedings and subject to the jurisdiction of that court.

FIRST CAUSE OF ACTION

STRICT PRODUCT LIABILITY

34.   Plaintiffs incorporate herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

35.   Defendants are manufacturers and suppliers of Norplant.

36.   The Norplant manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

37.   Alternatively, the Norplant manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, it was more dangerous than an ordinary consumer would expect.

38.   The Norplant manufactured and supplied by Defendants was defective due to inadequate warning or instruction because the manufacturer knew or should have known that the product created a risk of harm to consumers and the manufacturer failed to adequately warn of said risk or alternatively, the manufacturer failed to warn that other comparable birth control methods, such as oral contraceptives, have no such frequency, severity of multiplicity of adverse affects.

39.   The Norplant manufactured and supplied by Defendants was defective due to inadequate warning or instruction because the product

literature fails to specify the outcome of any teratogenicity tests upon Norplant, or indeed, to state whether Defendants actually performed any teratogenicity tests upon Norplant, even though it is foreseeable that Norplant will be used during pregnancy.

40. The Norplant manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after the manufacturer knew or should have known of the risk of injury from Norplant, it failed to provide an adequate warning to users or consumers of the product.

41. As a direct and proximate result of the defective condition of Norplant as manufactured and supplied by Defendants, Plaintiff suffered and will continue to suffer harm and economic loss as previously described.

## SECOND CAUSE OF ACTION

### NEGLIGENCE

42. Plaintiffs incorporate herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

43. Defendants had a duty to exercise reasonable care in the manufacture, sale and/or distribution of Norplant into the stream of commerce, including a duty to assure that the product did not cause women to suffer from unreasonable, dangerous side effects. Defendants failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of Norplant into interstate commerce in that Defendants knew or should have known that the product Norplant created a high risk of unreasonable, dangerous side effects which could only be alleviated by additional explantation surgery.

7

44.   Defendants were negligent in the design, manufacture, testing, warning, marketing and sale of Norplant, in that they:

a.   Failed to use due care in designing and manufacturing Norplant so as to avoid the aforementioned risks to individuals when Norplant was being used for birth control;

b.   Failed to accompany their product with proper warnings regarding all possible adverse side effects associated with the use of Norplant and the comparative severity and duration of such adverse effects;

c.   Failed to conduct adequate pre-clinical and clinical testing, and post-marketing surveillance to determine the safety of Norplant;

d.   Failed to test for adverse effects on pregnancy and failed to warn women of the possible danger to the fetus if pregnancy occurs while Norplant is in use. Defendants have, to the contrary, suggested in its labeling that Norplant is safe if used during pregnancy;

e.   Failed to provide adequate training to medical care providers for implantation and explantation of Norplant; and

f.   Were otherwise careless or negligent.

45.   Despite the fact that Defendants knew or should have known that Norplant caused unreasonable, dangerous side effects which many women would be powerless to remedy by explantation, Defendants continued to market Norplant to consumers including Plaintiffs.

46. Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants failure to exercise ordinary care as described above.

47. As a direct and proximate result of Defendants negligence, Plaintiff suffered and will continue to suffer harm and economic loss as previously described.

48. Defendants conduct in the marketing of a drug upon a disadvantaged class of women which drug it knew to have serious, dangerous side effects and which it knew many women would be unable to discontinue despite the side effects and which it failed to adequately test for teratogenic potential, evidences such indifference and callus disregard of public health and was so willful and wanton as to expose Defendants to the payment of punitive damages.

<u>THIRD CAUSE OF ACTION</u>

<u>BREACH OF EXPRESS WARRANTY</u>

49. Plaintiffs incorporate herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

50. Defendants expressly warranted that Norplant was safe and well accepted by patients studied.

51. Norplant does not conform to these express representations because clinical trials revealed that Norplant is not safe, has high levels of side effects, and indeed has a discontinuation rate in excess of 18% due to product dissatisfaction within two years of receiving Norplant.

52. As a direct and proximate result of the breach of said warranties, Plaintiff suffered and will continue to suffer harm and economic loss as alleged herein.

## FOURTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

53.   Plaintiffs incorporate herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

54.   At the time Defendants marketed, sold, and distributed Norplant for use by Plaintiff, Defendants knew of the use for which Norplant was intended and impliedly warranted the product to be of merchantable quality and safe for such use.

55.   Plaintiffs and their physicians reasonably relied upon the skill and judgment of Defendants as to whether Norplant was of merchantable quality and safe for its intended use.

56.   Contrary to such implied warranty, Norplant was not of merchantable quality or safe for its intended use, because the product was unreasonably dangerous as described above.

57.   As a direct and proximate result of the breach of implied warranty, Plaintiffs suffered and will continue to suffer harm and economic loss as alleged herein.

## FIFTH CAUSE OF ACTION

### MAGNUSON - MOSS WARRANTY ACT

58.   Plaintiffs incorporate herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

59.   At all times material hereto, Plaintiffs were purchasers of Norplant as defined by the Magnuson - Moss Warranty Act, 15 U.S.C. § 2301, et al.

60.   Defendants are suppliers and warrantors as defined by the Magnuson - Moss Warranty Act, 15 U.S.C. § 2301, et al., in that the Defendants are engaged in the business of making or distributing a

10

consumer product which is directly or indirectly available to consumers, and Defendants offer written warranties and are otherwise obliged under the implied warranties of merchantability and fitness for a particular purpose.

61. Defendants directly market Norplant to consumers, through advertisements in women's magazines, and other promotional literature, in addition to marketing to Medicaid recipients.

62. In none of its advertising or marketing, do Defendants warn women of the increased risk of adverse effects from use of Norplant.

63. In none of its advertisements or marketing, do Defendants warn women of the increased risk of long-term side effects caused by the need for surgical intervention to cease use of the product.

64. By the aforesaid conduct, Defendants have breached their written expressed warranty, and Defendants have breached the implied warranties of merchantability and fitness for a particular purpose.

<u>SIXTH CAUSE OF ACTION</u>

<u>MISREPRESENTATION</u>

65. Plaintiffs incorporate herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

66. Defendants negligently and carelessly made the foregoing misrepresentations without a reasonable basis thereto and did not possess information on which to accurately base those representations.

67. Defendants were aware that they did not possess information on which to accurately base the foregoing representations and concealed from Plaintiff that there was no reasonable basis for making said representation herein.

11

68.   When Defendants made the foregoing representations, they knew or should have known them to be false.

69.   In reliance of the foregoing misrepresentations by the Defendants, Plaintiffs were induced to and did subject herself to the use of the aforementioned products.   If Plaintiffs had known of the true facts, she would not have taken such action and risk.   The reliance of the Plaintiffs on Defendants' misrepresentations and omissions were made by individuals and entities who are in a position to know the true facts.

70.   As a result of the forgoing negligent misrepresentations by the Defendants, Plaintiffs suffered injuries and damages as alleged herein.

SEVENTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

71.   Plaintiffs incorporate herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

72.   The Defendants actively promoted and marketed the aforementioned products to the Plaintiff, the physicians and the public at large, with no regard to the health of the Norplant recipients nor adequate warnings concerning the potentially dangerous health consequences in the face of knowledge to the contrary that the effects of said products were potentially severe, chronic, disabling and permanent.

73.   Based upon the foregoing knowledge by the Defendants regarding these dangerous propensities of Norplant, Defendants knew the use of said products would cause the recipients of said products extreme emotional distress on a long term basis.

74.   That   the   foregoing   conduct   of   Defendants   was   callous, outrageous and amounted to a wilful, intentional and reckless disregard for the probability of causing Plaintiffs to suffer anxiety, mental anguish and severe emotional and physical distress.

75.   As a result of the foregoing conduct by the Defendants, Plaintiff suffered and will continue to suffer in the future severe anxiety, worry, fright, mental and emotional pain, stress, anxious and emotional trauma.

## EIGHTH CAUSE OF ACTION

### FRAUD

76.   Plaintiffs incorporate herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

77.   Defendants, from the time that the aforementioned products were first manufactured, marketed and distributed, and up to the present, made   false   and   fraudulent   misrepresentations   to   Plaintiffs,   their physicians and the general public including, but not limited to, that said products were safe, fit and effective for implantation in the human system and exposure to the materials used therein was not hazardous to the health of the recipient.

78.   At all times mentioned herein, Defendants conducted a sales and marketing campaign to promote the sale of the Norplant through advertisements in women's magazines and other promotional literature and fraudulently deceived Plaintiff, physicians, and the general public, as to the health risks and consequences of the aforementioned products when implanted into the human system, and in further failing to disclose that other methods of birth control are safer, have fewer side effects and can be more readily discontinued.   These representations and omissions were

13

made directly by Defendants, their sales representatives and other authorized agents of said Defendants.

79. When Defendants made the foregoing misrepresentations and omissions, they knew them to be false, and said representations were made by Defendants with the intent to defraud and deceive Plaintiff, physicians, and the general public, with the intent to induce Plaintiff and/or her physicians to use the aforementioned product as a birth control device.

80. At all times mentioned herein, Defendants fraudulently concealed from the Plaintiffs the true facts, including, but not limited to, the injuries suffered by Plaintiffs as delineated herein.

81. In reliance on the foregoing false and fraudulent misrepresentations and omissions by Defendants, Plaintiffs were induced to and did subject herself to the use of the aforementioned product. If the Plaintiffs had known of the true facts, she would not have taken such action and risk. The reliance of the Plaintiffs on Defendants' misrepresentations and omissions was justified because said misrepresentations and omissions were made by individuals and entities who were in the position to know the true facts.

82. As a result of the foregoing false and fraudulent misrepresentations and omissions by the Defendants, the Plaintiffs suffered injuries and damages as alleged herein.

83. The foregoing conduct by the Defendants was malicious, fraudulent and oppressive towards Plaintiff and thereby acted with wilful and wanton and/or conscious and reckless disregard for the safety of Plaintiffs.

14

84.   Defendants, directly, or by and through an officer, director or managing agent, authorized sales representatives, employees and other agents to engage in the aforesaid conduct and ratified all such activities by said agents.

85.   As a result of the foregoing conduct by the Defendants, Plaintiffs suffered injuries and damage as alleged herein and request punitive and exemplary damages in such amounts as would punish each Defendant for their conduct and act as an example that would deter them, as well as other companies and members of the same industry from engaging in similar conduct in the future.

WHEREFORE, Plaintiffs prays for relief as follows:

1.   Full refund of all costs for Plaintiffs' Norplant implantation and explantation;

2.   Compensatory, consequential damages, and punitive damages individually in excess of the jurisdictional amount;

3.   Attorneys' fees, expenses, and costs of this action; and

4.   Such further relief as this Court deems necessary, just, and proper.

Respectfully submitted,

NESS, MOTLEY, LOADHOLT,
RICHARDSON & POOLE

By: _H. Blair Hahn_   w/perm.
H. Blair Hahn, Esquire       by ZZA
174 East Bay Street, Suite #100
Charleston, SC 29401
(803) 720-9000

LAW OFFICES OF CHIKOVSKY & SHAPIRO

By: _____

Adam H. Smith , Esquire
7th Floor
1720 Harrison Street
Hollywood, FL 33020
(305) 920-4438


ATTORNEYS FOR PLAINTIFFS
MARIE PIERRE, ET AL.

August ____, 1996.

16

<u>JURY DEMAND</u>

With the filing of their Complaint, Plaintiffs herein demand a trial by jury.

NESS, MOTLEY, LOADHOLT,
RICHARDSON & POOLE

By: _____    w/ perm.
H. Blair Hahn, Esquire        by RRA
174 East Bay Street, Suite #100
Charleston, SC 29401
(803) 720-9000


LAW OFFICES OF CHIKOVSKY & SHAPIRO

By: _____
Adam H. Smith , Esquire
7th Floor
1720 Harrison Street
Hollywood, FL 33020
(305) 920-4438


ATTORNEYS FOR PLAINTIFFS
MARIE PIERRE, ET AL.


August ___, 1996.

17

JS-44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

Marie Pierre, Et Al.

## DEFENDANTS

Wyeth Laboratories, Inc., et al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ Dade _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ Chesterfield _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

## 96-2503 CIV-ATKINS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Fred Chikovsky, Esq.
CHIKOVSKY & SHAPIRO
1720 Harrison St.
Home Building 7th Fl
Hollywood, Fl   33020
(305) 940-6417

H.Blair Hahn, Esquire
NESS, MOTLEY
174 E. Bay S
Charleston, SC
(803) 720-9000

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE
DUBÉ

CAT A 1:96CV2503/ATKINS/Dube

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Pursuant to 28 US 1332.  This is a personal injury product litigation.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE  Richard A. Schell   DOCKET NUMBER   MDL: 1038
IN RE: NORPLANT CONTRACEPTIVE PRODUCTS LIABILITY LITIGATION

DATE  9/03/96

SIGNATURE OF ATTORNEY OF RECORD

Rec. #510075

9/3/96, $120.00

UNITED STATES DISTRICT COURT